**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF LOUISIANA**
**SHREVEPORT DIVISION**

TIMOTHY D. CAPERS                    CIVIL ACTION NO. 23-1202

VERSUS                               JUDGE S. MAURICE HICKS, JR.

WALMART INC.                         MAGISTRATE JUDGE HORNSBY

**MEMORANDUM RULING**

Before the Court is Defendant Walmart Inc.'s ("Walmart") Motion for Summary Judgment. See Record Document 26. Plaintiff Timothy D. Capers ("Mr. Capers") opposed. See Record Document 32. Walmart replied. See Record Document 35. For the reasons stated below, Walmart's Motion (Record Document 26) is **GRANTED**. All claims asserted against Walmart are **DISMISSED WITH PREJUDICE**.

**BACKGROUND**

Mr. Capers began employment with Walmart in January 2006 as an assistant manager. See Record Document 1 at ¶ 10. At the time of his termination, he was the store manager of Walmart Neighborhood Market Store No. 3752 in Bossier City, Louisiana. See id. In May 2018, during a break at a meeting at the Walmart Academy in Minden, Louisiana, Market Manager Brian Ducote ("Ducote"), Mr. Capers's supervisor and a white male, was allegedly overheard stating that he intended to fire all of the Market Store Managers in Shreveport and Bossier City "by any means possible." See id. at ¶ 11. All of the Market Store Managers in those areas, including Mr. Capers, were black. See id. After the meeting, Mr. Capers claims that each of the Market Store Managers under Ducote's

supervision in Shreveport and Bossier were subjected to unjust working conditions in an attempt to compel them to quit. See id. at ¶ 12.

In June 2018, Ducote issued a third written disciplinary notice to Mr. Capers after a power outage occurred at the store. See id. at ¶ 13. Mr. Capers asserts that under Walmart's disciplinary policy, this should have been nothing more than a first coaching; however, Ducote escalated the discipline to a third written notice. See id. at ¶ 14. In August 2018, Mr. Capers suffered a mild stroke while on vacation. See id. at ¶ 15. He was hospitalized for two days during his vacation but able to return to work upon conclusion of vacation leave. See id. He alleges that the residual effects of the stroke were evident when he returned to work. See id. at ¶ 16. He claims his speech was a little bit slower than normal, he did not have as much stamina as before, and he had some muscle weakness. See id.

In October 2018, Ducote allegedly told Mr. Capers that he should consider retiring. See id. at ¶ 17. Mr. Capers claims he inquired about stepping down to an assistant manager position. See id. He allegedly spoke to the manager of one of the local store locations, who stated that she needed an assistant manager. See id. The manager of the local store supposedly contacted the Human Resources representative for the area and asked to have Mr. Capers re-assigned to her store as one of her assistant managers. See id. at ¶ 18.

In January 2019, a Human Resources representative allegedly spoke to Mr. Capers to initiate the process of re-assigning him to one of the vacant assistant manager positions. See id. at ¶ 19. On February 7, 2019, Mr. Capers claims Ducote told him that he could not refer him to the assistant manger position and then terminated his

2

employment without explanation. See id. at ¶ 20. Mr. Capers argues there was no just cause or wrongful conduct that would have justified termination of his employment. See id. at ¶ 21. Additionally, he asserts that Ducote did not follow Walmart's disability accommodation protocols or disciplinary protocols when he terminated his employment. See id.

At the time of his termination, Mr. Capers claims there were vacant job positions for assistant mangers at several locations in the Shreveport-Bossier area. See id. at ¶ 22. He alleges he was an experienced employee, and managers had been requesting to hire him as an assistant manager at their respective stores. See id. As a result of the alleged discriminatory termination of employment, he argues he suffered immediate financial injury, hardship, and serious emotional distress. See id. at ¶ 23.

Mr. Capers claims he has exhausted all administrative prerequisites to suit. See id. at ¶ 24. He filed a complaint of discrimination with the Equal Employment Opportunity Commission ("EEOC") on June 20, 2019. See id. A "Dismissal and Notice of Rights" and "Notice of Suit Rights" was issued on June 19, 2023 and is attached to his Complaint. See id.

The first paragraph of Mr. Capers's Complaint alleges race discrimination, sex discrimination, disability discrimination, and retaliation. See id. at 1. However, his Complaint only alleges race discrimination and disability discrimination with sufficient specificity. See id. at ¶¶ 25–34. As to his sex discrimination claim and retaliation claim, Mr. Capers provides no specific factual allegations or supporting evidence in either his Complaint or opposition to Walmart's Motion. Therefore, with respect to his potential sex

3

discrimination and retaliation claims, Walmart's Motion is **GRANTED**, and these claims are **DISMISSED WITH PREJUDICE**.

Furthermore, Mr. Capers has withdrawn his Title VII race discrimination claim. Footnote one of his opposition provides, "Mr. Capers is pursuing a claim for disability discrimination under the Americans with Disabilities Act, and specifically a claim for failure to accommodate his disability…Mr. Capers will not pursue a race discrimination claim…." See Record Document 32 at 1, fn. 1. Therefore, the Court will not analyze whether the prima facie case has been satisfied, as his withdrawal is clear and unambiguous. There are no genuine issues of material fact to support a finding of racial discrimination. Thus, with respect to his Title VII race discrimination claim, Walmart's Motion is **GRANTED**, and the claim is **DISMISSED WITH PREJUDICE**.

The Court will now move on to its analysis of Mr. Capers's specifically alleged claims under the ADA for disability discrimination and failure to accommodate. The Court's recited legal standards, summary of the parties' arguments, and analysis will only focus on these two claims under the ADA. It will not focus on Mr. Capers's claims for sex discrimination, retaliation, or race discrimination, as they do not survive summary judgment.

## LAW AND ANALYSIS

### I. Legal Standards.

#### (a) Summary Judgment Standard.

Summary judgment is proper when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). A

genuine dispute of material fact exists if the record, taken as a whole, could lead a rational trier of fact to find for the non-moving party. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 106 S. Ct. 2505, 2510 (1986). When reviewing a motion for summary judgment, the court must view "all facts and inferences in the light most favorable to the non-moving party." Romero v. City of Grapevine, Tex., 888 F. 3d 170, 175 (5th Cir. 2018).

"Once a movant submits a properly supported motion, the burden shifts to the non-movant to show that the court should not grant the motion." Lucero v. General Motors LLC, No. 21-02893, 2022 WL 16578415, at *2 (S.D. Tex. Nov. 1, 2022). "The non-movant then must provide specific facts showing there is a genuine dispute." Id. The non-moving party "cannot defeat summary judgment with conclusory allegations, unsubstantiated assertions, or only a 'scintilla of evidence.'" Hathaway v. Bazanay, 507 F. 3d 312, 319 (5th Cir. 2007). A court may consider pleadings, depositions, answers to interrogatories and admissions on file, together with any affidavits when determining whether summary judgment is appropriate. See FED. R. CIV. P. 56(c). In evaluating a motion for summary judgment, the court "may not make credibility determinations or weigh the evidence" and "must resolve all ambiguities and draw all permissible inferences in favor of the non-moving party." Total E & P USA Inc. v. Kerr-McGee Oil & Gas Corp., 719 F.3d 424, 434 (5th Cir. 2013).

(b) Americans with Disability Act ("ADA") Failure to Accommodate.

"The ADA prohibits covered employers from 'discriminat[ing] against a qualified individual on the basis of disability.'" Feist v. La., Dept. of Justice, Office of the Atty. Gen., 730 F. 3d 450, 452 (5th Cir. 2013) (quoting 42 U.S.C. § 12112(a)). Under the ADA, "[d]iscrimination includes the failure to make 'reasonable accommodations to the known

physical or mental limitations of an otherwise qualified individual with a disability…unless such covered entity can demonstrate that the accommodation would impose an undue hardship.'" Id. (quoting 42 U.S.C. § 12112(b)(5)(A)). The Fifth Circuit has held that a successful failure to accommodate claim under the ADA requires the plaintiff to prove three elements: "(1) the plaintiff is a 'qualified individual with a disability;' (2) the disability and its consequential limitations were 'known' by the covered employer; and (3) the employer failed to make 'reasonable accommodations' for such known limitations." Id.

A reasonable accommodation under the ADA may include the following: (1) "making existing facilities used by employees readily accessible to and usable by individuals with disabilities" and (2) "job restricting, part-time or modified work schedules, reassignment to a vacant position, acquisition or modification of equipment or devices, appropriate adjustment or modifications of examinations, training materials or policies, the provision of qualified readers or interpreters, and other similar accommodations for individuals with disabilities." Id. at 453 (citing 42 U.S.C. § 12111(9)).

<u>(c) ADA Disability Discrimination.</u>

"In a discriminatory-termination action under the ADA, the employee may either present direct evidence that [he] was discriminated against because of [his] disability or alternatively proceed under the burden-shifting analysis first articulated in <u>McDonnell Douglas</u>…, a Title VII case." <u>See</u> <u>E.E.O.C. v. LHC Group, Inc.</u>, 773 F. 3d 688, 694 (5th Cir. 2014). The "analysis first requires the plaintiff to establish a prima facie case of discrimination." <u>Id.</u> To prove a prima facie case for a violation of the ADA, a plaintiff must show that "(1) he is disabled or regarded as disabled within the meaning of the ADA, (2)

he is qualified for the job position, and (3) he was subjected to an adverse employment action on account of his disability or perceived disability." Id. at 697.

If the plaintiff establishes his prima facie case, "'the burden shifts to the employer to "articulate a legitimate, nondiscriminatory reason" for its actions.'" Mueck v. La Grange Acquisitions, L.P., 75 F 4th 469, 483 (5th Cir. 2023) (quoting Thompson v. Microsoft Corp., 2 F. 4th 460, 470 (5th Cir. 2001) (citation omitted)). If a legitimate, nondiscriminatory reason is articulated by the employer, the burden shifts back to the plaintiff "'to prove that the employer's explanation was a pretext for discrimination.'" Id. To meet this burden, the plaintiff must rebut "'each of the nondiscriminatory reasons the employer articulates.'" Id. (quoting Wallace v. Methodist Hosp. Sys., 271 F. 3d 212, 220 (5th Cir. 2001)). Specifically, the plaintiff can display "'evidence of disparate treatment or by showing that the employer's proffered explanation is false or unworthy of credence.'" Id. (quoting Gosby v. Apache Indus. Servs., Inc., 30 F. 4th 523, 527 (5th Cir. 2022) (internal quotation marks and citation omitted)).

**II. Summary of the Arguments.**

Walmart asserts that Mr. Capers had a history of negative performance evaluations and coachings throughout his twelve-year employment with Walmart. See Record Document 26-2 at 9. Walmart states that he received three evaluations where he was graded as "development needed," most recently after his promotion to Store Manager in 2017. See id. He received negative feedback in his 2018 evaluation, including that he "struggled with Customer experience in his store" and "need to…focus[] on associate development rather than associate replacement." See id. Walmart advances that Mr. Capers was issued six coachings throughout his employment with Walmart, and three of

these coachings were for job performance issues. See id. His most recent coaching was a level three disciplinary action for poor job performance after he allegedly failed to follow protocol when his store lost power, causing "a total appox loss of $70,000, and a delayed opening of store 3752 on the 4th of July, an extremely busy holiday." See id. at 9–10.

Walmart contends that Mr. Capers does not dispute the facts of the incident and acknowledges responsibility. See id. at 10. If Mr. Capers disagreed with this disciplinary action, he could have used Walmart's open door protocol to challenge the action, but he did not. See id. Walmart contends this level three disciplinary action was part of his active employment record when he was terminated in February 2019 and did not expire until July 7, 2019. See id.

Walmart avers that it terminated Mr. Capers's employment on February 7, 2019 for his inability to perform his job. See id. at 11. Specifically, Walmart asserts that he "failed to create an environment that executes inventory control processes timely and accurately"; "failed to create an environment that teaches processes and execution with his associates and management staff"; and "failed to create an expectation with all associates and management staff to greet help and thank every customer." See id. Additionally, Walmart claims he was "unable to reach CFF goals for all of 2018." See id. Walmart submits that he signed and acknowledged his exit interview, which was witnessed by another Walmart associate. See id. Even though Mr. Capers was eligible for rehire, he did not apply for subsequent employment with Walmart. See id.

Although Mr. Capers was eligible for medical leave, Walmart argues he did not request medical leave or otherwise notify his supervisors that he was missing work; instead, he claims that his subordinates allegedly informed Ducote that he was in the

hospital. See id. Walmart asserts that Mr. Capers never requested an accommodation under the ADA, despite his intimate knowledge as a high-level Walmart manager on the ADA, his extensive training on the ADA, and his own work processing the accommodation requests of his associates. See id. at 12.

Mr. Capers testified he did not make an accommodation request through Walmart's Accommodation Service Center ("ASC") or provide any medical documentation to Walmart regarding his alleged disability. See id. Rather, he requested to step down as an assistant manager by emailing Matthew Baker ("Baker"), the Market Human Resources Manager for Markets 507 and 542. See id. Walmart argues this email does not reference needing an accommodation, the stroke that he suffered on vacation, or any subsequent symptoms of his stroke. See id. at 12–13. Furthermore, Walmart contends that Mr. Capers does not articulate how the position of assistant manager would have accommodated his alleged limitations, especially since he subsequently obtained another job with Dollar General as a store manager. See id. at 13. Thus, Walmart submits that the email sent to Baker was insufficient notice that Mr. Capers was requesting to step down as an accommodation for an alleged disability. See id. at 23.

In addition to the arguments above, Walmart contends Mr. Capers has not met his prima facie case of showing that he was disabled. See id. at 21. Even if he could adequately present the prima facie case, which Walmart denies, Walmart advances that he cannot rebut that there was a legitimate, non-discriminatory reason for termination. See id. Ultimately, Walmart requests that the Court grant its Motion and dismiss all claims with prejudice. See id. at 27.

Mr. Capers opposes, submitting that he has established the prima facie case for disability discrimination under the ADA. See id. at 11. He asserts he was qualified for his job, he had a disability, Walmart knew of his disability, and he requested an accommodation. See id. at 12–16. He contends that under the ADA, a stroke qualifies as a physical or neurological impairment that substantially limits one or more major life activities. See id. at 13. Mr. Capers claims that after his stroke, he had numerous impairments, such as inability to grip or hold with his right hand; foot and leg numbness; unstable gait due to weakened right leg and foot; slowed speech; having to pause to process communications; and reduced stamina. See id. at 13–14. He argues a jury could find that he is disabled under the ADA because he had one or more significant impairments of one or more major life activities. See id. at 14.

Additionally, Mr. Capers contends that there is overwhelming evidence that Walmart knew of his disability. See id. When he became ill at work and then hospitalized in August 2018, he claims that both he and his wife spoke directly to Ducote, disclosing his stroke and symptoms. See id. He also claims that his coworkers informed Ducote of his illness and symptoms. See id.

In September 2018, Mr. Capers avers that Walmart reached out to him regarding the serious illness medical benefit, and thus, Walmart allegedly knew he had a stroke. See id. He advances that his wife completed and returned the claim form to Walmart, attaching the requested supporting documentation. See id. This form allegedly contained physician statements documenting that Mr. Capers could not use his right hand; he had high blood pressure and diabetes; and he suffered a stroke "with permanent neurological deficit." See id.

Mr. Capers also submits that he requested an accommodation in his email to Baker. See id. at 15. While he admits there may be disputed facts regarding how much Walmart knew, he argues it does not undermine or reduce the significance of the information conveyed to Walmart in the email. See id. He contends that Walmart was obligated to engage in further discussions with him about his impairments and reasonable accommodation. See id. at 15–16.

Mr. Capers maintains that he can establish his ADA disability discrimination claim through direct and circumstantial evidence. See id. at 16. He argues the document detailing his exit interview is direct evidence that Walmart's decision to terminate his employment was based on his disability. See id. at 17. Within this document, Mr. Capers points to the statement that his employment was terminated due to his "inability to perform the job." See id. He submits that this statement establishes "discriminatory bias." See id.

Alternatively, Mr. Capers asserts that both this statement within the exit interview document and Ducote's statement that "he had to fire Mr. Capers because the accommodation request was denied are circumstantial evidence of discriminatory intent." See id. at 18. He argues that he had no active disciplinary warnings at the time of his termination. See id. Furthermore, he contends that Walmart's records show that he had no coaching entered into his record after July 2018 and prior to his termination. See id.

Mr. Capers advances that "even if Walmart's articulated explanation could carry its burden, [he can] show[] that a jury could consider the fact that Walmart's explanation for dismissal at least involved some consideration of whether or not he was 'able' to do his job, and conclude that Walmart discriminated against his because of disability." See id. at

20. He avers that a jury could reasonably accept his testimony and reject Walmart's "vague record entry regarding alleged 'failures.'" <u>See id.</u> at 21.

Attached to Mr. Capers's opposition is a separate document containing his "objections to summary judgment evidence and responses to [Walmart's] statement of material facts." <u>See</u> Record Document 32-1. He asserts that "[n]one of the challenged exhibits are accompanied by an affidavit or declaration from a custodian of records or other qualified witness establishing that the documents are what [Walmart] claims them to be." <u>See</u> Record Document 32-1 at 1–2. He submits that these documents "are not self-authenticating under Federal Rule of Evidence 902 and do not satisfy Rule 901's foundational requirement." <u>See id.</u> at 2.

Additionally, Mr. Capers avers that Walmart's exhibits contain inadmissible hearsay. <u>See id.</u> He continues that Walmart has also failed to demonstrate admissibility for summary judgment purposes, as "[n]o declarations have been submitted under Rule 56(c)(4) to reduce these documents to admissible form." <u>See id.</u> at 3. He ultimately requests that the Court sustain his objections and strike the following exhibits submitted by Walmart: Exhibits D, E, F, G, I, J, K, L, M, N, O, P, Q, R, S, T, U, V, W, and X.[1] <u>See id.</u>

Walmart replies, reiterating that the undisputed facts show he was not disabled under the ADA, he never requested an accommodation, and he was terminated for performance issues. <u>See</u> Record Document 35 at 5. Walmart contends that his opposition relies primarily upon a self-serving and contradictory affidavit of Nicole E. Capers ("Mrs. Capers"), his wife, as well as a claim for critical illness insurance benefits to a third-party,

---

[1] The Court notes that Exhibit H is purposefully omitted from Mr. Capers's list of objections.

Allstate. See id. Walmart submits that these exhibits are not appropriate summary judgment evidence and do not create genuine issues of material fact. See id. at 6.

Walmart maintains that Mrs. Capers's declaration is not competent summary judgment evidence because it is a self-serving declaration that conflicts with Mr. Capers's deposition testimony regarding his alleged disability, contains legal conclusions, and presents information to which she is not competent to testify. See id. Moreover, Walmart advances that his reliance on the Allstate insurance documents is misplaced, as there is no evidence that Walmart ever received them, and Mr. Capers specifically testified that he did not submit medical documentation to Walmart. See id. at 6–7. Walmart also points out that his EEOC Charge contains multiple hearsay statements and is not competent summary judgment evidence. See id. at 7.

Walmart argues Mr. Capers's attempt to discount its submitted business records should be rejected. See id. The disputed exhibits include his employment records; his job description; Walmart's policies; and evidence of his poor job performance. See id. Walmart contends that Rule 56 is clear that it can rely upon its business records produced as competent summary judgment evidence; thus, Mr. Capers's objections should be overruled. See id. at 8, 10.

Walmart reasserts that Mr. Capers's ADA failure to accommodate claim should be dismissed. See id. at 10. It points out that the McDonnell Douglas framework does not apply to an ADA failure to accommodate claim, and even if it did, his termination records are not evidence of direct discrimination. See id. at 11. Walmart argues that he merely infers and presumes the meaning of select words in the termination documents "far beyond their logical meaning." See id.

13

Walmart also reiterates that Mr. Capers has not presented genuine issues of material fact that he is disabled under the ADA. See id. at 12. Prior to filing his opposition and Mrs. Capers's declaration, Walmart avers that Mr. Capers never stated that any of his life activities were substantially impaired by his stroke. See id. at 12–13. Walmart resubmits that he has not presented any genuine issues of material fact that Walmart knew about his alleged disability or that he ever requested an accommodation. See id. at 14–15.

Walmart restates that it has presented a legitimate, non-discriminatory reason for Mr. Capers's termination. See id. at 16. Walmart argues he has offered nothing but unsupported assertions that the disciplinary action was not active when he was terminated, which Walmart views as a "blatant misrepresentation." See id. For all the reasons stated in Walmart's Motion and reply, it ultimately requests that its Motion be granted and all claims be dismissed with prejudice. See id. at 17.

## III. Analysis.

As an initial matter, the Court finds that all of Walmart's proffered exhibits are admissible, and Mr. Capers's objections are overruled. A district court is "'given broad discretion in rulings on the admissibility of evidence.'" Equal Emp't Opportunity Comm'n v. Ryan's Pointe Hous., LLC, No. 15-2782, 2025 WL 783429, at *4 (S.D. Tex. Jan. 21, 2025) (quoting Rock v. Huffco Gas & Oil Co., 922 F. 2d 272, 277 (5th Cir. 1991)). "'To satisfy the requirement of authenticating or identifying an item of evidence, the proponent must produce evidence sufficient to support a finding that the item is what the proponent claims it is.'" Dugas v. Ace Am. Ins. Co., 468 F. Supp. 3d 769, 773 (W.D. La. 2020) (quoting FED. R. EVID. 901). A document can be authenticated "though '[t]estimony of a [w]itness

with [k]nowledge' that 'an item is what it is claimed to be.'" Id. The authentication requirement can also be satisfied "'if the document's form and content, taken with other circumstances, indicate the document is reliable.'" Id. at 774.

Mr. Capers's deposition testimony has authenticated the majority of Walmart's exhibits. The Court will not go through his testimony line-by-line; however, counsel for Walmart introduced and questioned Mr. Capers about Walmart's policies, his employment records, his exit interview, and other documents he now claims are inadmissible. See Record Documents 32-3 & 32-4. Furthermore, these exhibits' form and content, taken with other circumstances, indicate they are reliable. Walmart's logo appears on several of the documents, and there is nothing to suggest that Walmart attempted to introduce falsified business records or employment records. Therefore, these exhibits are admissible at the summary judgment stage.

(a) ADA Failure to Accommodate.

Mr. Capers must satisfy all three elements of the prima facie case to overcome summary judgment. There is a dispute with respect to the first element on whether he qualifies as disabled under the ADA. "The ADA defines a 'disability' as '(A) a physical or mental impairment that substantially limits one or more major life activities of such individual; (B) a record of such an impairment; or (C) being regarded as having such an impairment….'" McKinney v. Sheriffs Office Rapides Parish, No. 19-01339, 2021 WL 1083979, at *3 (W.D. La. Mar. 19, 2021) (quoting 42 U.S.C. § 12102(1)). "The three subsections of the disability definition are referred to as the 'actual disability' prong, the 'record of' prong, and the 'regarded as' prong, respectively." Id. A plaintiff is only required to prove disability under one prong. See id.

15

Here, the parties do not address which prong is applicable; however, the Court finds prong one is sufficient to the facts of this case. Mr. Capers must prove two things: (1) "that he had a qualifying 'physical or mental impairment,'" and (2) the "impairment 'substantially limit[ed] one or more major life activities.'" Id. Under the applicable EEOC regulations, a physical or mental impairment is defined "as '[a]ny physiological disorder or condition…affecting one or more body systems, such as neurological, musculoskeletal, special sense organs, respiratory (including speech organs), cardiovascular, reproductive, digestive, genitourinary, immune, circulatory, hemic, lymphatic, skin, and endocrine.'" Id. at *4 (quoting 29 C.F.R. § 1630.2(h)(1)).

Mr. Capers claims his stroke and accompanying symptoms qualify him as disabled under the ADA. While the standards under the first prong are not implemented to be demanding, he "is required to provide specific, detailed evidence regarding [his] impairment and its effect on his abilities." Id. at *5. Mr. Capers supports his argument with several attached exhibits. See Record Document 32-2.

From the summary judgment record, it is evident that Mr. Capers never requested any medical leave in connection with his stroke. See Record Document 32-3 at 82–83; see also Record Document 32-4 at 75. From the time he suffered his first stroke in 2018 until his termination in February 2019, he testified that he was able to perform the day-to-day duties as store manager. See Record Document 32-3 at 96. Mr. Capers never listed having a disability while he worked at Walmart. See id. at 139. In fact, after his termination at Walmart, he started working at Dollar General where he performed "more physical labor" than he did at Walmart. See Record Document 32-4 at 81.

16

The Court finds Mr. Capers does not qualify as disabled under the ADA. One of the key phrases under the ADA's definition is "substantially impaired." While he may have experienced residual effects from his stroke, it was not enough to substantially limit a major life activity. He did not take additional medical leave from work, he routinely performed his daily duties at Walmart, and his subsequent employment at Dollar General required more physical labor. Therefore, Mr. Capers does not qualify as disabled under the ADA, thereby failing to satisfy the first element of the prima facie case.

Even if he qualified as disabled under the ADA, which he does not, Mr. Capers cannot establish that Walmart knew of his disability, the required second element. To support the second element, he points to several exhibits, such as his email with Baker, Mrs. Capers's declaration, Mona Oes's ("Oes") affidavit, his deposition testimony, and his insurance claim with Allstate. The Court finds the majority of Oes's affidavit includes inadmissible hearsay. Her direct observations of Mr. Capers at work in September 2018 are admissible because they are based on her personal knowledge. However, her speculative statements about what she heard regarding his medical condition are hearsay. She states, "I learned that he would have to be admitted. His blood pressure was extremely high. He was nauseated. I later found out he was threatening a stroke." See Record Document 32-5. She allegedly contacted Ducote "to inform him of what was going on with [Mr. Capers] and that he would have to be out a couple of days after being released from the hospital under whatever his doctors order may be." See id. Oes merely recounts what she told Ducote over the phone after Mrs. Capers called her about what the doctors said in the hospital. This recounting is inadmissible hearsay because Oes does not have personal knowledge of the information shared during these conversations

17

with the doctors. See Ripple v. Marble Falls Indep. Sch. Dist., 99 F. Sup. 3d 662, 675 (W.D. Tex. 2015). Her statements are based on information and belief rather than personal knowledge. See id. at 674. Therefore, the Court will not consider Oes's statements about Mr. Capers's medical condition or the phone calls as admissible summary judgment evidence.

Mr. Capers also points to his deposition testimony to support his argument that Walmart knew of his alleged disability. He confirmed he never officially requested any type of medical leave with Walmart. See Record Document 32-3 at 82–83. He claims Ducote knew about his stroke after talking with him in person and Oes and Zandra Black ("Black") over the phone. See id. at 83–84. Mr. Capers does not have personal knowledge of Oes's and Black's phone calls with Ducote, as he was not privy to these conversations. His testimony about what was said during those alleged phone calls is inadmissible hearsay, which is not competent summary judgment evidence.

Mrs. Capers's declaration is also offered as an attempt to show Walmart was aware of Mr. Capers's stroke. See Record Document 32-2 at 1. She claims she "heard [Mr. Capers] telling [] Ducote that he had suffered a stroke" over the phone. See Record Document 32-2 at 1. This statement is also inadmissible hearsay because she does not have personal knowledge to this phone call. She simply alleges that she overheard a phone conversation, which does not demonstrate a showing of personal knowledge.

At the time of Mr. Capers's hospitalizations, Walmart had both a national and Louisiana medical-related accommodation policy. See Record Documents 26-13 & 26-14. Both policies explain several ways to request a disability accommodation. A request may be submitted to any salaried member, management, or an HR representative. See

18

Record Document 26-13 at 2; <u>see also</u> Record Document 26-14 at 2. Certain job adjustments can be approved by facility management; however, if they are unable to grant a request, a formal request can be made from Walmart's ASC. <u>See</u> Record Document 26-13 at 2–3; <u>see also</u> Record Document 26-14 at 2. If a request is based on a medical condition, a medical questionnaire form must be filled out to provide Walmart with the necessary information it needs for the request. <u>See</u> Record Document 26-13 at 3; <u>see also</u> Record Document 26-14 at 2. Mr. Capers never submitted any official medical documentation to Walmart; he only submitted information to Allstate, a third-party insurance company. <u>See</u> Record Document 32-3 at 88–89, 95. In his deposition, he confirmed that from an overview of Walmart's record, there is no indication that he had a disability. <u>See id.</u> at 139.

Mr. Capers also points to his February 6, 2019 email to Baker and Ducote as evidence of Walmart's knowledge. The email provides, "I would like to put in request to step down because of health reason [sic]. I have been struggling with my health for the past year high blood pressure and getting my blood sugar levels under control. I was in the hospital in July and August for these issues. Had conversation with my doctor and he feels [I] should try something different." <u>See</u> Record Document 26-28. While Mr. Capers contacted his supervisor and an HR representative, this email provides no information about his stroke. The only medical issues he mentions are high blood pressure and blood sugar levels, which may or may not be related to his stroke.

Even though Walmart may have been aware of his high blood pressure and blood sugar levels, it was not aware of the limitations resulting from them. It is Mr. Capers's responsibility to assert his limitations. <u>See</u> <u>Decou-Snowton v. Parish</u>, No. 21-1302, 2022

WL 4245492, at *15 (E.D. La. Sept. 15, 2022). He returned to work and did not request additional medical leave, making it difficult for Walmart to know he was disabled and had certain limitations. His email makes general claims "but provides no details that would have alerted [Walmart] to the disability's qualifying status." Doe v. Spillman Ranch Homes LP, No. 23-01525, 2025 WL 1692600, at *4 (W.D. Tex. Feb. 18, 2025). Thus, Mr. Capers has failed to satisfy the second element of the prima facie case and demonstrate there are genuine issues of material fact with respect to Walmart's knowledge.

The Court will not analyze the third and final element, as the first two elements have not been satisfied. Mr. Capers's proffered evidence is insufficient to overcome summary judgment. Therefore, with respect to his ADA failure to accommodate claim, Walmart's Motion is **GRANTED**, and the claim is **DISMISSED WITH PREJUDICE**.

(b) ADA Disability Discrimination.

The second and third elements of the prima facie case are easily satisfied. Mr. Capers was qualified for the manager position at Walmart, and his employment was ultimately terminated. Even so, as analyzed above, the Court finds that Mr. Capers does not qualify as disabled under the ADA, and thus, he fails to satisfy the first element of the prima face case. Even if the Court found that Mr. Capers could satisfy all three elements of the prima facie case, which it does not, Walmart has established it had legitimate, nondiscriminatory reasons for his termination.

Mr. Capers points to Walmart's Exhibit C to show he was terminated due to his disability. See Record Document 26-6 at 7. He claims he was terminated because he could not perform his job duties due to his stroke; however, this is a misinterpretation of

20

the language. In addition to Exhibit C, Walmart also submits two other exhibits providing further details about his termination. Exhibit D states that Mr. Capers's termination was due to unsatisfactory job performance. <u>See</u> Record Document 26-7. Exhibit X provides the exit interview, in which Ducote lists several comments explaining why Mr. Capers was ultimately terminated. <u>See</u> Record Document 26-27. Ducote's comments include:

> [Mr. Capers] has failed to create an environment that executes inventory control processes timely and accurately. Some examples include Shrink in D90 due to associate throwing merchandise without processing through markdown or credit. This has led to shrink doubling in D90 pro instock performance, caused by lack of oversight on throw verification. Additionally, [Mr. Capers] has failed to create an environment that teaches processes execution with his associates and management staff. The lack of discipline around PI control processes does not realize the efficiencies intended to reduce friction around availability for customers. [Mr. Capers] has failed to create an expectation with all associates and management staff to greet help and thank every customer and has been unable to reach CFF goals for all of 2018. Associate was on 3rd level discipline previously, and this.

<u>See id.</u> These comments provide insight into what "inability to perform job" really means. The Court does not interpret this language to mean he physically could not perform his job duties; rather, he was not able to meet expectations as the store manager. In fact, Mr. Capers testified that he never requested additional leave and returned to his duties. <u>See</u> Record Document 32-3 at 96; <u>see also</u> Record Document 32-4 at 75. Therefore, Walmart has sufficiently provided legitimate, nondiscriminatory reasons for termination.

Mr. Capers cannot prove that Walmart's reasons were a pretext for discrimination. He never reported any discrimination or harassment during his time at Walmart. <u>See</u> Record Document 32-4 at 50. Additionally, he confirmed that during the power outage in

July 2019, his subordinates' actions and the store were ultimately his responsibility. <u>See</u> Record Document 32-3 at 73–74, 126. As a result of the power outage, store sales were affected due to lost merchandise and refrigerated medication in the pharmacy. <u>See id.</u> at 74–75.

Mr. Capers also argues Ducote did not follow Walmart's disciplinary protocols when he escalated the situation to a third written notice, which ultimately led to termination. <u>See</u> Record Document 32-3 at 77–78. According to Walmart's "Disciplinary Action Management Guidelines" in effect at the time of his termination, "[t]here may be times when it is appropriate to skip disciplinary action levels based on the circumstances." <u>See</u> Record Document 26-12 at 1. Even if Mr. Capers did not have an active disciplinary action pending, Ducote was permitted to place him on a third written notice under Walmart's protocol. <u>See id.</u> Walmart's policy allows Ducote to skip to a third written notice "for an unrelated concern or [if it] is more appropriate than a First or Second Written based on the situation." <u>See id.</u> at 2. This policy gives superiors, like Ducote, ample discretion when deciding how to discipline an employee. Even though Mr. Capers did not expect to be terminated, his termination was not due to his alleged disability. He has failed to show pretext on the part of Walmart. Therefore, with respect to his ADA disability discrimination claim, Walmart's Motion is **GRANTED**, and the claim is **DISMISSED WITH PREJUDICE**.

**CONCLUSION**

For the reasons stated above,

**IT IS ORDERED** that Walmart's Motion for Summary Judgment (Record Document 26) is **GRANTED**. All of Mr. Capers's claims asserted against Walmart are **DISMISSED WITH PREJUDICE**.

A Judgment accompanying this Ruling shall issue herewith.

**THUS DONE AND SIGNED,** in Shreveport, Louisiana, this 22nd day of July, 2025.

UNITED STATES DISTRICT COURT JUDGE